# EXHIBIT S

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER INC., )<br>BLACK & DECKER (U.S.) INC., )<br>EMHART CORPORATION, and )<br>EMHART INDUSTRIES, INC. )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>No. 96-10804-DPW |

## AFFIDAVIT OF M. CLAYTON ROOP

I, M. Clayton Roop, depose and say:

1. I am Director of Corporate Risk Management of Black & Decker and have held this title since 1989. My duties include reviewing and maintaining a record of expenses in the Long-Term Exposure Claims at issue in this action.

2. In my affidavit dated February 4, 1998, I attached a table setting forth the expenses that Black & Decker had incurred in connection with each of the Long-Term Exposure Claims. Attached hereto as Exhibit A is an updated table listing the expenses that Black & Decker has incurred through November 30, 1998 in connection with each of the Long-Term Exposure Claims. Exhibit A was prepared based on my review of

business records. In preparing Exhibit A, I have taken into account the reimbursement that Black & Decker has received from other sources. Such reimbursements are shown in the columns entitled Liberty Mutual Reimbursement, Hartford Reimbursements and Twin Cities Reimbursements in Exhibit A.

3. The Mississippi Hearing Loss Claim involves allegations of injuries caused by exposure to Black & Decker's products.

4. Black & Decker retained ESIS, Inc. ("ESIS"), a subsidiary of CIGNA, as a claims administrator for the Mississippi Hearing Loss Claim. In its capacity as claims administrator, ESIS received certain invoices in connection with the defense of the Mississippi Hearing Loss Claim, primarily from Black & Decker's local counsel, paid those invoices and sought reimbursement of portions of those invoices from Black & Decker's insurers. To the extent that ESIS was not reimbursed by Black & Decker's insurers, ESIS obtained reimbursement of the unpaid balance from Black & Decker.

5. In a letter from Linda McCroddan of ESIS dated September 4, 1992, a copy of which is attached as Exhibit B, ESIS requested reimbursement from Black & Decker's insurers for payments that ESIS had made for defense costs in the Mississippi Hearing Loss Claims through September 4, 1992 as follows:

| | | |
|---|---|---|
| Liberty Mutual | 37.5% | $31,996.03 |
| Home Insurance | 12.5% | $10,665.35 |
| London Insurers | 12.5% | $10,665.35 |
| Twin Cities | 4.0% | $ 3,412.94 |

6. In a letter from Linda McCroddan of ESIS dated June 18, 1993, a copy of which is attached as Exhibit C, ESIS sought reimbursement from Black & Decker's insurers for payments that ESIS had made for defense costs in the Mississippi Hearing Loss Claim following September 4, 1992 as follows:

| | | |
|---|---|---|
| Liberty Mutual | 37.5% | $62,866.67 |
| Home Insurance | 12.5% | $20,955.56 |
| Twin Cities | 4.0% | $ 6,718.58[1] |

7. In a letter dated December 28, 1993 from Gordon Clifford, a copy of which is attached as Exhibit D, ESIS stated that it sought reimbursement from Black & Decker's insurers for payments that ESIS had made for defense costs in the Mississippi Hearing Loss Claim following June 18, 1993 as follows:

| | | |
|---|---|---|
| Liberty Mutual | 37.5% | $68,585.65 |
| Home Insurance | 12.5% | $22,861.89 |
| Twin Cities | 4.0% | $ 7,315.80 |

8. The business records that I have reviewed indicate that none of the insurers made payments in the amounts requested by ESIS. This is shown in the chart below.

---

[1] The letter states that ESIS sought payment of 12.5% of the invoices, or $20,955.56, from Twin Cities, but in a letter dated December 28, 1993 (Exhibit D, infra), ESIS stated that the Twin Cities share of the invoices mentioned in the June, 1993 invoices was four percent.

3

| Insurer | Amt. Invoiced | Amt. Paid to ESIS |
|---|---|---|
| Liberty Mutual | $163,448.35 | $158,214 |
| Home/Hartford | $ 54,482.80 | $   9,546 |
| Twin Cities | $ 17.447.32 | 14,022 |
| London Insurers | $ 10,665.35[2] | 0 |

9. The business records that I reviewed indicate that the last Liberty Mutual payment for defense costs in the Mississippi Hearing Loss Claim was made in March, 1994.

10. Black & Decker continued to incur defense costs in the Mississippi Hearing Loss Claim following December 28, 1993, the date of Mr. Clifford's letter.

11. The insurers failed to make payment of invoices as requested in the letters of September 4, 1992, June 18, 1993 and December 28, 1993. The business records that I reviewed indicate that, following the December 28, 1993 letter, ESIS did not send letters to Black & Decker's insurers requesting reimbursement of any defense costs that ESIS subsequently paid on behalf of Black & Decker. Instead, ESIS sought reimbursement for such payments only from Black & Decker.

12. In a letter dated January 6, 1994, a copy of which is attached as Exhibit E, The Home Insurance Company requested that its share of defense costs in the Mississippi Hearing Loss Claim be reduced to 4.17%.

---

[2] The amount invoiced to London Insurers through December, 1993 would have been $54,482.80, if, there were an agreement that London Insurers was responsible for 12.5%, as set forth in Exhibit D to the Schlemmer Affidavit.

4

13. Black & Decker paid for certain defense costs in the Mississippi Hearing Loss Claim directly, rather than through ESIS, including the invoices for services rendered by Miles & Stockbridge, lead counsel in the Mississippi Hearing Loss Claim. The defense costs for which ESIS sought reimbursement in its letters dated September 4, 1992, June 18, 1993 and December 28, 1993 did not represent all defense costs that Black & Decker incurred through the dates of those letters, but, instead were all the Black & Decker defense costs paid by ESIS during the periods of those letters. Black & Decker reimbursed ESIS for all such payments.

14. The only reimbursements that Black & Decker received for defense costs that it incurred in the Mississippi Hearing Loss Claim are set forth in Exhibit A. They are as follows:

| | |
|---|---|
| Liberty Mutual Reimbursement | $158,214 |
| Hartford Reimbursement | $ 9,546 |
| Twin Cities Reimbursement | $ 14,022 |

15. As shown in Exhibit A, Black & Decker incurred unreimbursed defense costs of $1,583,000 in connection with the Mississippi Hearing Loss Claim.

16. ESIS also paid invoices for defense costs that Black & Decker incurred in the Mississippi Hand/Arm Vibration Claim. The business records that I have reviewed indicate that

5

ESIS did not seek reimbursement for defense costs in the Mississippi Hand/Arm Vibration Claim from any of Black & Decker's insurers.

17. Black & Decker has paid all its defense costs in connection with the Mississippi Hand/Arm Vibration Claim, either by making payments directly to counsel or by reimbursing ESIS for payments that ESIS made to Black & Decker's counsel.

18. The statement in paragraph 38 of the Schlemmer affidavit that "Liberty Mutual made payments toward the incurred defense costs for the Mississippi Hand/Arm Vibration Claim" is contradicted by the business records that I reviewed. Those records indicate that Black & Decker has not received any payments from Liberty Mutual, or any other source, in connection with the defense of the Mississippi Hand/Arm Vibration Claim.

19. As of November 30, 1998, the total amount that Black & Decker had paid for defense costs in the Mississippi Hand/Arm Vibration Claim was $441,732. Black & Decker is continuing to incur defense costs in the Mississippi Hand/Arm Vibration Claim.

20. Attached hereto as Exhibit F is a copy of a letter dated September 13, 1994 from Gordon Clifford of ESIS to Marty Berger of The Home Insurance Company.

21. The Arkansas Hearing Loss Claim involved claims of injury from alleged exposure to products allegedly manufactured by Farrel, a corporation acquired by Black & Decker. During the course of the Arkansas Hearing Loss Claim, there was an arrangement for payment of defense costs among Farrel's insurers that is set forth in a March 15, 1993 letter from Dolores Ladd of Aetna to Shirlann Shifflet of Black & Decker, a copy of which is attached as Exhibit G. The formula set forth in Exhibit G was that shares of defense costs were assigned based on the percentage of the alleged exposure period during which each insurer issued applicable policies of insurance to Farrel. Those shares of defense costs were set forth as follows in Exhibit G:

| | |
|---|---|
| Undocumented: | 27% |
| Liberty Mutual: | 17% |
| Aetna: | 41% |
| Hartford: | 4% |
| Home: | 4% |
| AIG: | 4% |
| Zurich: | 3% |

22. Exhibit G identifies the "undocumented" period as June 1, 1964 through November 1, 1971 and states "if we are able to document the coverage at a later date, the defense costs can be reallocated and reimbursements made at that time". Black & Decker paid the costs allocated to the "undocumented" period.

7

23. During the Arkansas Hearing Loss Claim, Black & Decker's local counsel submitted their invoices directly to Black & Decker and Black & Decker's insurers for payment in accordance with the formula set forth in Exhibit G or a revision of that formula that was made after Liberty Mutual acknowledged that it had issued policies applicable to a portion of the "undocumented" period. The invoices or accompanying correspondence from local counsel generally stated the total invoice amount and the percentage of the invoice payable by each party. The parties who received the invoices made payments directly to the law firms.

24. After Exhibit G was sent to Black & Decker and various insurers, Liberty Mutual admitted that it was Farrel's insurer during a portion of the "undocumented" period, *i.e.*, July 1, 1967-November 1, 1971, that it would pay the percentage of defense costs applicable to that period (increasing its share to 33%) and would reimburse Black & Decker for the defense costs allocable to that period which Black & Decker had paid. See letter from Marcia Golden Weiner of Liberty Mutual to Gary C. Duvall of Miles & Stockbridge, dated December 28, 1994, a copy of which is attached as Exhibit H, and letter from Lorren Beneke of Liberty Mutual to Mr. Duvall dated December 30, 1994, a copy

of which is attached as Exhibit I. Liberty Mutual subsequently reimbursed Black & Decker $13,101, as is shown in the column entitled Liberty Mutual Reimbursement in Exhibit A.

25. It is my understanding that Liberty Mutual has admitted that it was Black & Decker's insurer during the remaining portion of the "undocumented" period, *i.e.*, June 1964-July 1, 1967. Liberty Mutual has not reimbursed Black & Decker for expenses allocable to that period.

26. Miles & Stockbridge was Black & Decker's lead counsel in the successful defense of the Arkansas Hearing Loss Claim and performed considerable services in the defense of that action. The Miles & Stockbridge invoices for professional services in defense of the Arkansas Hearing Loss Claim were not submitted to Black & Decker's insurers for payment in the same manner as the invoices of local counsel. Black & Decker paid those invoices.

27. Black & Decker's unreimbursed expenses in connection with the Arkansas Hearing Loss Claim are $744,646. The unreimbursed expenses consist of the portion of invoices from Black & Decker's local counsel that were not paid by Black & Decker's insurers and invoices that were not sent to Black &

Decker's insurers for payment.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January __, 1999.

*M. Clayton Roop*
M. Clayton Roop