

**EXHIBIT**

**A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

COPY

CIVIL ACTION
NO. 96-10804-DPW

## OPPOSITION OF LIBERTY MUTUAL INSURANCE COMPANY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Kenneth R. Brown (BBO #557052)
Karen R. Sweeney (BBO #557050)
Peter J. Duffy (BBO #566682)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA  02109
(617) 951-9000

to the pollution exclusion. Liberty Mutual's Memorandum at 259. The Defendants, however, have not moved for summary judgment with respect to the PAS/Irwin Site.

## VII.    The Defendants Have Failed To Prove That They Are Entitled To Summary Judgment On The Long Term Exposure Claims

In their motion for summary judgment, the Defendants seek summary judgment with respect to five of the seven active long-term exposure claims at issue in this action. Each of those long-term exposure claims allegedly involves multiple plaintiffs who were injured by exposure to various products of the Defendants or their predecessors in interest. Specifically, the Defendants state that they are entitled to summary judgment that Liberty Mutual had a duty to defend the Defendants with respect to the Arkansas Hearing Loss Long-Term Exposure Claim, the Mississippi Hearing Loss Long-Term Exposure Claim, the Maritime Hearing Loss Long-Term Exposure Claim, the Mississippi Hand/Arm Vibration Long-Term Exposure Claim and the Alwell Long-Term Exposure Claim. See Defendants' Motion at ¶2. The Defendants further state that they are entitled to a declaration that Liberty Mutual owes a duty to indemnify the Defendants with respect to each of the above-listed long-term exposure claims. The Defendants' contentions are wrong for several reasons.

First, the Defendants' motion for summary judgment on the duty to defend with respect to these claims is moot as Liberty Mutual previously agreed to provide a defense to the Defendants with respect to each of these claims. See Liberty Mutual Memorandum at 1-2 n. 1. Second, with respect to Liberty Mutual's purported duty to indemnify these claims, the Defendants' motion must be denied, and summary judgment should be entered in favor of Liberty Mutual, because

the Defendants have failed to bring forth any evidence supporting their claim for indemnification. Each of these issues is discussed seriatim.

In their memorandum, the Defendants maintain that "Liberty Mutual has not contested coverage under its CGL policies for these five claims." Defendants' Memorandum at 56, citing to Liberty Mutual's September 6, 1996 Submission To Court With Respect To Its Position On Defendants' Claims For Coverage ("Submission") at 57-58. Liberty Mutual's submission to the Court, however, sets forth no such admission. To the contrary, in its Submission, Liberty Mutual merely informed the Court that it had agreed to pay defense costs with respect to four of these five claims. See Liberty Mutual's Submission at 57-58; Liberty Mutual's Exhibit Binder 28, at Tab 25.[19] The Defendants also maintain that Liberty Mutual has allegedly "admitted" that the Mississippi Hearing Loss Claim was "covered" under the Black & Decker policies. Defendants' Memorandum at 63, citing the letter from Alan D. Schlemmer, dated March 3, 1992 ("Schlemmer Letter"); Defendants' Appendix XXVII (27) at 53-56; Liberty Mutual's Exhibit Binder 28 at Tab 26. A review of Mr. Schlemmer's letter, however, reveals that Liberty Mutual only agreed to defend Black & Decker, subject to a reservation of rights as to any claims for indemnity. See Schlemmer Letter at 2.

In their memorandum, the Defendants further state that Liberty Mutual "contests the share of defense costs that it is required to pay." Defendants' Memorandum at 56-57. The Defendants further state that

---

[19]  The remaining Alwell Claim was not made a part of this coverage action until after Liberty Mutual had made its submission to the Court. There is no dispute, however, that Liberty Mutual has agreed to provide a defense for the Defendants with respect to the Alwell Claim.

> Liberty Mutual made partial payments for two claims, but has not
> made additional payments either on those claims or on the other
> claims.

Defendants' Memorandum at 57.  The Defendants are incorrect, however.

Liberty Mutual has made payments on behalf of the Defendants with respect to the

Mississippi Hearing Loss Claim, the Arkansas Hearing Loss Claim, and the Mississippi

Hand/Arm Vibration Claim.  With respect to the Maritime Hearing Loss Claim and the Alwell

Claim, the Defendants have failed to tender to Liberty Mutual any bills or invoices with respect

to alleged insured defense costs, and nowhere in their memorandum do they support their

statement with evidence to the contrary.  With respect to the three other claims, since the

initiation of this action, the Defendants have not delivered to Liberty Mutual any additional bills

or invoices with respect to incurred defense costs.  Obviously, since Liberty Mutual has been

tendered no defense bills by the Defendants, Liberty Mutual could make no defense cost

payments.

Also, with respect to the Arkansas Hearing Loss Claim, the Mississippi Hearing Loss

Claim, and the Mississippi Hand/Arm Vibration Claim, the Defendants admit that defense costs

are being paid pursuant to cost-sharing agreements to which the Defendants, Liberty Mutual, and

other insurers are parties.  See Defendants' Memorandum at 60 and 63.[20]  In their memorandum,

in discussing the allocation of defense costs pursuant to these cost-sharing agreements, the

Defendants appear to take issue with respect to the terms and conditions concerning allocation of

---

[20]  In their papers, the Defendants fail to note for the Court that the Mississippi Hand/Arm Vibration claims are
being defended by Liberty Mutual and other insurance companies pursuant to the terms of the defense costs
allocation agreement in force with respect to the Mississippi Hearing Loss claim.

costs under those agreements, and seek to have this Court order Liberty Mutual to pay <u>additional</u> defense costs pursuant to those cost-sharing agreements. <u>See</u> Defendants' Memorandum at 60-64.

The Defendants, however, seem to forget that the action before this Court has <u>nothing</u> to do with the interpretation of defense cost-sharing agreements which were entered into by the Defendants, Liberty Mutual, and other insurance carriers, concerning the allocation of costs incurred as to three of the claims at issue here. Those cost-sharing agreements are <u>not</u> before this Court, and are nowhere set forth in any of the pleadings in this case. The only issue properly before this Court is whether there is a dispute between the parties with respect to Liberty Mutual's obligation to pay defense costs as to these five active long-term exposure claims. As set forth above, with respect to three of the claims, Liberty Mutual and the Defendants have entered into cost-sharing agreements which resolved these issues between the parties. Therefore, the Defendants' motion for summary judgment on the duty to defend with respect to the Mississippi Hearing Loss Claim, the Arkansas Hearing Loss Claim, and the Mississippi Hand/Arm Vibration Claim is not properly before this Court, and must be dismissed.

With respect to the Maritime Hearing Loss Claim, and the Alwell Claim, there is <u>no</u> dispute that Liberty Mutual has agreed to provide a defense to the Defendants. Therefore, there is no dispute existing between Liberty Mutual and the Defendants with respect to the duty to defend the Maritime Hearing Loss Claim and the Alwell Claim. Therefore, this Court should dismiss and deny the Defendants' motion for summary judgment against Liberty Mutual with respect to these two active long-term exposure claims.

In their motion, the Defendants also maintain that they are entitled to a declaration from this Court that Liberty Mutual owes a duty to <u>indemnify</u> the Defendants with respect to these five long-term exposure claims. <u>See</u> Defendants' Motion at ¶5. First of all, the Defendants have admitted that they have paid no indemnity with respect to the Arkansas Hearing Loss Claim, the Mississippi Hearing Loss Claim, and the Maritime Hearing Loss Claim, and that those claims have been dismissed. <u>See</u> Defendants' Memorandum at 60, 62 and 64. With respect to the Mississippi Hand/Arm Vibration Claim, and the Alwell Claim, the Defendants admit that they have paid no indemnity with respect to these two claims, although they state that the underlying actions remain "pending." Defendants' Memorandum at 66-67.

As to the Defendants' motion for summary judgment on the duty to indemnify with respect to the Mississippi Hearing Loss Claim, the Arkansas Hearing Loss Claim, and the Maritime Hearing Loss Claim as the Defendants have made no payments of indemnity and <u>will never have to make any such payments</u>, Liberty Mutual is entitled to the entry of summary judgment with respect to any duty to indemnify. Moreover, with respect to those three claims, and the Mississippi Hand/Arm Vibration Claim, and the Alwell Claim, the Defendants have failed to support their motion for summary judgment on Liberty Mutual's purported duty to indemnify, in violation of the Federal Rule of Civil Procedure 56.

The Defendants also have failed to supply any affidavits or otherwise averred-to documents to meet their burden of establishing that the "bodily injury" which allegedly "occurred" to the underlying plaintiffs, in fact took place during the policy periods purportedly at issue and was neither "expected nor intended" by the Defendants. Therefore, they have failed to meet their burden of establishing coverage under the Liberty Mutual policies, and summary

judgment should be entered against them.  At the least, this Court should dismiss their motion with respect to the duty to indemnify as the Defendants have failed to establish a record upon which this Court might make a summary judgment determination in their favor.

## VIII. The Issue Of The Alleged Reasonableness Of Attorneys' Fees And Settlements Is Not Ripe For Summary Judgment

In their motion for summary judgment, the Defendants only seek a declaration that Liberty Mutual owes them a defense and indemnification with respect to certain Tier I and Tier II Environmental Sites, and five of the Long Term Exposure Claims.  See Defendants' Motion at ¶¶2-5.  The Defendants do not seek the entry of summary judgment declaring that their incurred attorneys' fees and costs, and the settlement agreements into which they entered concerning several of the sites, were all "reasonable and fair."  See Id.  Nevertheless, the Defendants have submitted to the Court numerous volumes of attorneys' invoices and bills, and  additional volumes of settlement agreements, in an attempt to have this Court prematurely rule upon the question of ultimate fact as to whether such attorneys' fees and costs and the settlement agreements were all "reasonable and fair."  This issue is not properly before the Court at this time, however, and it is not ripe for decision for a host of reasons.

First of all, the parties have not had a full opportunity to present the facts on this issue. Indeed, the Court does not even reach this issue, if at all, until there has been a final ruling on Defendants' claims against Liberty Mutual for defense and indemnity.  In the event there is a determination in Liberty Mutual's favor on these claims, such issues that Defendants raise need not be addressed.

EXHIBIT

_____ B _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE
COMPANY,       )
        )
        )
        )
    Plaintiff,   )
        )
v.       )        CIVIL ACTION
        )        NO. 96-10804-DPW
THE BLACK & DECKER   )
CORPORATION, BLACK & DECKER  )
INC., BLACK & DECKER (U.S.)  )
INC., EMHART CORPORATION,  )
and EMHART, INC.,   )
        )
    Defendants.   )

## SUPPLEMENTAL SUBMISSION OF LIBERTY MUTUAL INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to the request of the Court made during the summary judgment motion hearing on May 18, 1998, Liberty Mutual Insurance Company ("Liberty Mutual"), now submits the following supplemental information as to several topics raised during oral argument.

**A.    The Active Long-Term Exposure Claims**

The Defendants seek summary judgment with respect to five of the seven active long-term exposure claims at issue in this action. Each of those long-term exposure claims allegedly involves multiple plaintiffs who were injured by exposure to various products of the Defendants or their predecessors in interest. Specifically, the Defendants maintain that they are now entitled to summary judgment that Liberty Mutual had a duty to defend the Defendants with respect to the

so-called Arkansas Hearing Loss Long-Term Exposure Claim, the Mississippi Hearing Loss Long-Term Exposure Claim, the Maritime Hearing Loss Long-Term Exposure Claim, the Mississippi Hand/Arm Vibration Long-Term Exposure Claim and the Alwell Long-Term Exposure Claim. See Defendants' Cross-Motion for Partial Summary Judgment ("Defendants' Motion") at ¶2. The Defendants further allege that they are entitled to a declaration that Liberty Mutual owes a duty to indemnify the Defendants with respect to each of the above-listed long-term exposure claims. The Defendants' contentions are wrong for several reasons.

As previously argued, the Defendants' motion for summary judgment on the duty to defend with respect to these claims as previously argued, should be denied as Liberty Mutual has already agreed to provide a defense to the Defendants with respect to each of these claims. With respect to the Mississippi Hearing Loss Claim, Mississippi Hand/Arm Vibration Claim and the Arkansas Hearing Loss Claim, Liberty Mutual agreed to contribute to the defense of the Defendants' pursuant to various cost-sharing agreements entered into by Liberty Mutual, the Defendants and other insurance carriers. With respect to Liberty Mutual's purported duty to indemnify these claims, the Defendants' motion must also be denied, and summary judgment should be entered in favor of Liberty Mutual, because the Defendants have failed to bring forth any evidence supporting their claim for indemnification.

During the hearing on May 18, 1998, the Court asked Liberty Mutual's counsel to provide further information concerning the cost-sharing agreements entered into amongst the parties with respect to the Mississippi Hearing Loss Claim, the Mississippi Hand/Arm Vibration Claim and the Arkansas Hearing Loss Claim. The requested information is set forth below.

- 2 -

1.    **Arkansas Hearing Loss Claim**

As previously set forth in the record, the Arkansas Hearing Loss Claim arises out of a complaint filed in Arkansas state court by more than 400 current or former employees of the Texarkina, Arkansas plant of Copper Tire Company.  The underlying plaintiffs claimed that they suffered hearing loss as a result of exposure to products utilized by the workers in the Cooper Tire plant, including products allegedly manufactured by the Farrel Company.  Inasmuch as the Cooper Tire plant first opened in 1964, that date was determined by the parties to be the earliest possible date of exposure to any Farrel products by the workers.

The underlying plaintiffs' complaint was initially dismissed and then refiled in the Arkansas state court.  According to the Defendants, approximately one third of the claims asserted against Farrel were dismissed from the state court action in 1994, with the remaining claims being dismissed in 1996.  The defendants have admitted that they paid no indemnity amounts to the underlying plaintiffs as a result of the dismissal.  See Defendants' Memorandum in Support of Their Cross-Motion for Partial Summary Judgment ("Defendants' Memorandum") at 59-60.

In their papers, the Defendants have admitted that the Defendants, Liberty Mutual and various other carriers entered into a cost-sharing agreement with respect to the defense obligations incurred in the Arkansas Hearing Loss Claim.  The defendants stated as follows: "Black & Decker and its insurers allocated defense costs pursuant to cost-sharing agreements, with each insurer paying in proportion to the percentage of the exposure period for which it provided coverage."  Defendants' Memorandum at 60, citing the Defendants' Appendix Volume XXVII [27] at 20-24.  The document set forth in the Defendants' Appendix is a letter dated July

- 3 -

30, 1992, from Delores Ladd, a Senior Regional Analyst, Southeastern Environmental Claim Office, of the Aetna Casualty & Surety Company, as is attached hereto as Exhibit A. The letter outlined a cost-sharing agreement between the various carriers beginning June 1, 1964 and running through January 1, 1991.

Pursuant to this cost-sharing agreement, various carriers assumed a percentage of the defense costs being incurred by the Defendants with respect to the Arkansas Hearing Loss Claim. Pursuant to the terms of the letter, Liberty Mutual was assigned a period from December 31, 1968 through May 4, 1976, representing its coverage under various USM policies. This worked out to be 27% of the total time period. The period between June 1964 and December 31, 1968, was assigned to "unidentified" carriers. This period of time amounted to 17% of the total amount of time for cost-sharing purposes.

On March 15, 1993, Delores Ladd wrote a letter to Shirlann Shifflett, a Claims Administrator at Black & Decker, concerning the Arkansas Hearing Loss Claim and the cost-sharing agreement. In that letter, attached hereto as Exhibit B, Ms. Ladd described her discussions with Stephen Johnson from Liberty Mutual concerning Liberty Mutual's appropriate share of the defense costs under the cost-sharing agreement. As a result of information received from Liberty Mutual concerning coverage under the various USM policies, Ms. Ladd set forth new percentages under the cost-sharing agreement which enlarged the period for "undocumented" to include the period from June 1, 1964 through November 1, 1971, reflecting a percentage of 27%. Liberty Mutual's share was reduced from 27% to 17%. At this point in time, the Defendants had <u>only</u> made claims against Liberty Mutual with respect to the Arkansas Hearing Loss Claims under USM policies.

- 4 -

As set forth in the memorandum from Stephen Johnson, a Technical Claims Specialist at Liberty Mutual, to Alan Schlemmer, Home Office Special Claims at Liberty Mutual, dated April 15, 1993, attached hereto as Exhibit C, which set forth the reasoning involved in the reduction of Liberty Mutual's cost-sharing arrangement percentage from 27% to 17%. In the memorandum, it indicated that Mr. Johnson had spoken to Delores Ladd at Aetna, and that she indicated to him that Black & Decker had agreed to pay 27% of the defense costs pursuant to the cost-sharing agreement and that Liberty Mutual's agreed upon share would be 17%.

At a subsequent point in time, it was determined by the parties that additional coverage might be available for the Defendants from Liberty Mutual pursuant to various policies issued by Liberty Mutual to Farrel. Various inquiries took place from the Defendants' counsel at Miles & Stockbridge to Liberty Mutual in an attempt to determine what coverages might be available under policies issued to Farrel. An example of these communications is set forth in a letter from Gary Duvall, at Miles & Stockbridge, one of the Defendants' counsel, to Elaine Caprio Brady, an attorney at Liberty Mutual, dated September 29, 1994, attached hereto as Exhibit D.

In his letter to Ms. Brady, Mr. Duvall "thanked" Ms. Brady for responding to his requests to send to him various additional Liberty Mutual insurance policies issued to the "Farrel-Birmingham Company" for the periods July 1, 1961 through July 1, 1963. Mr. Duvall requested that Liberty Mutual continue its search for various Farrel policies. In the course of that letter, Mr. Duvall also set forth his understanding as to the Defendants' obligations under the cost-sharing agreement and the percentages owed by Liberty Mutual under such an agreement:

> Also, as you may already be aware, various insurance carriers who issued policies to the defendants involved in the Cooper Tire Hearing Loss litigation pending in Arkansas [Arkansas Hearing Loss Claim] had entered into a cost-sharing agreement to share defense costs associated with defending this litigation in proportion to their respective percentage of coverage. Prior to determining

whether coverage existed, Black & Decker was allocated a 27% share of the defense costs for the period when no insurance coverage of Farrel could be located. Black & Decker has now been able to establish that, in fact, Liberty Mutual provided coverage to Farrel during this time period. As Liberty Mutual's duty to defend is clearly invoked under the terms of its policies, please note that Liberty Mutual is responsible for the 27% share of all defense costs associated with the Cooper Tire Hearing Loss litigation.

Duvall September 29, 1994 Letter at 2.

In response to Mr. Duvall's letter to Ms. Brady, Marsha Golden Weiner sent a letter to Mr. Duvall on December 28, 1994. This letter is attached as Exhibit E. In her letter to Mr. Duvall, Ms. Weiner indicated that Liberty Mutual had completed its search for any and all comprehensive general liability policies issued to the Farrel-Birmingham Company. Ms. Weiner noted that while Liberty Mutual was able to locate various primary insurance policies issued by Liberty Mutual in effect after July 1, 1967, Liberty Mutual was unable to locate or confirm the existence of any insurance policies in existence from July 1, 1964 through July 1, 1967. As such, Ms. Weiner indicated that Liberty Mutual would assume a portion of those "undocumented" percentage of defense costs which had been assumed by Black & Decker, so that Liberty Mutual total share would reflect the time period of coverage effective from July 1, 1967 through May 5, 1976. This amounted to 33% of the total allocation of defense costs pursuant to the cost-sharing agreement. Ms. Weiner stated, however, that Liberty Mutual was unable to find sufficient evidence of the terms, limits and conditions of any alleged liability coverage in existence from 1964 through July 1, 1967, and therefore, Liberty Mutual could not accept from the defendants that portion of the allocation defense costs.

On January 17, 1995, Kevin Pascalle, another of the defendants' attorneys at Miles & Stockbridge, wrote a letter to Ms. Weiner, concerning the Arkansas Hearing Loss Claim. A copy

- 6 -

of this letter is attached as Exhibit F.  In this letter, Mr. Pascalle noted that the defendants were "happy" to hear that Liberty Mutual had agreed to pay 33% of the future defense costs under the cost-sharing agreement.  Mr. Pascalle, however, stated that the defendants were still "unsatisfied" with Liberty Mutual's failure to assume the remainder of the percentages under the cost-sharing agreement associated with the time periods from 1964 through July 1, 1967.  Mr. Pascalle noted that the defendants believe that Liberty Mutual did provide coverage to them during that time period, and requested that Liberty Mutual continue its search for those "lost policies." Subsequent to the filing of this case, Liberty Mutual during discovery located comprehensive general liability insurance policies issued to the Farrel-Birmingham Company by Liberty Mutual during the time period 1964 through July 1, 1967.  In their summary judgment papers, the Defendants maintain that "Liberty Mutual has not reimbursed Black & Decker for the portion of the defense costs that Black & Decker erroneously paid on the basis of the misrepresentation that the 1964 to 1967 policies did not exist.  The Black & Decker group thus seek payment of the defense costs Liberty Mutual wrongfully withheld." Defendants' Memorandum at 62.  While Liberty Mutual disputes the fact that it "wrongfully" withheld any payment of defense costs with respect to this time period, as previously set forth in its papers, Liberty Mutual has agreed to pay for those additional defense costs alleged incurred by Black & Decker with respect to the time periods from 1964 to 1967.

During his deposition in this action, Alan Schlemmer stated that Liberty Mutual has paid to Black & Decker all of its share of defense costs in the Arkansas Hearing Loss case except with respect to the three-year time period from 1964 to 1967, that was in dispute amongst the parties up until this litigation.  See Deposition Transcript of Alan Schlemmer, dated March 24, 1998

("Schlemmer Dep.") at 163, attached as Exhibit G. As Mr. Schlemmer noted in his deposition, there have been no requests from Black & Decker with respect to this last three-year period since the initiation of this action. See Schlemmer Dep. at 163-164.

To the extent that the Defendants provide Liberty Mutual with evidence of payment of these additional defense costs which it paid out with respect to the allocated time period from 1964 through 1967, Liberty Mutual is ready to review those invoices and bills and tender appropriate payment to the Defendants.

2.    Mississippi Hearing Loss Claim

As previously set forth by the parties in their papers, the Mississippi Hearing Loss Claim concerns some 3,500 complaints by present and former employees of the Ingalls Shipyard in Pascagoula, Mississippi, filed in Mississippi state court. In their complaints, to which are identical except for the dates of the alleged exposure and the name of the plaintiffs, it was alleged that the various underlying plaintiffs suffered hearing loss from the use of power tools manufactured by a variety of companies including Black & Decker. The underlying complaints were filed against Black & Decker in July 1991, and all claims against Black & Decker were dismissed as of August 1, 1996. Black & Decker paid no indemnity with respect to this claim.

The Defendants have admitted that Liberty Mutual has paid a portion of the total defense costs incurred with respect to this claim, pursuant to a "cost-sharing agreement." Defendants' Memorandum at 63. In their memorandum, the Defendants' identified the cost-sharing agreement as that document set forth in their Appendix Volume XXVII [27] at 57-69. A copy is attached hereto as Exhibit H. Pursuant to the terms of that cost-sharing agreement, Liberty Mutual assumed an obligation to pay 37.5% of the defense costs incurred with respect to the

- 8 -

Mississippi Hearing Loss Claim. Pursuant to that same agreement, Black & Decker agreed to assume 33.5% of the total incurred defense costs.

In a letter from Linda McCroddan, a Senior Claim Representative at ESIS, Inc. addressed to Alan Schlemmer, at Liberty Mutual, dated November 15, 1991, Ms. McCroddan identified ESIS as a company that had been providing claims handling services to Black & Decker, and it would be coordinating the defense of the Mississippi Hearing Loss Claim on behalf of Black & Decker. See Letter from Linda McCroddan, to various parties, dated November 15, 1991, attached as Exhibit I

On January 31, 1992, Ms. McCroddan on behalf of Black & Decker sent a letter to Black & Decker's various insurance carriers concerning the Mississippi Hearing Loss litigation. With that letter, Ms. McCroddan enclosed her draft of a proposed cost-sharing agreement to be entered into among all the parties, including Black & Decker. In that initial cost-sharing agreement draft, Black & Decker was identified as a party to the agreement and its share of defense costs was set to be 20%. See Draft Interim Agreement attached to McCroddan January 31, 1992 Letter at 3, both set forth as Exhibit J. The remaining carriers, including Liberty Mutual, each was assigned a 20% obligation for paying defense costs. In her letter, Ms. McCroddan requested that the parties get back to her with any proposed modifications to the agreement.

Subsequent to that time, in her letter dated August 5, 1992, and attached hereto as Exhibit K, Ms. McCroddan sent to Mr. Schlemmer a revised interim cost-sharing agreement. She noted in her letter that Black & Decker had agreed to consider itself "self insured" for the period of 1964 through 1970, and as a result, its corresponding percentage share had been increased from 20% to 33.5%. The other shares had also been modified accordingly, with Liberty Mutual's

- 9 -

share rising from 20% to 37.5%. Attached to her August 5, 1992 letter is a revised interim cost-sharing agreement including the altered percentage shares for defense costs.

On June 18, 1993, in a letter from Ms. McCroddan to various insurance company representatives, and attached hereto as Exhibit L, she indicated that ESIS, on behalf of Black & Decker, had made additional payment totaling $167,644.46. Pursuant to "our cost-sharing agreement," Ms. McCroddan set forth the amount owed by each carrier, including Liberty Mutual. At 37.5% share, Liberty Mutual owed $62,866.67.

On November 3, 1992, Alan Schlemmer, on behalf of Liberty Mutual, executed the interim cost-sharing agreement. See copy attached as Exhibit M. In a letter dated December 28, 1993, from Gordon Clifford, Team Leader, ESIS to John P. Sweeney, Black & Decker's attorney at Miles & Stockbridge, attached as Exhibit N, concerning the Mississippi Hearing Loss Claim, Mr. Clifford indicated that he was enclosing a copy of "the Cost-Sharing Agreement."

As set forth by Mr. Schlemmer in his deposition testimony, the cost-sharing agreement as to the Mississippi Hearing Loss Claims was entered into by Liberty Mutual, Black & Decker, and various other insurance carriers with respect to the Mississippi Hearing Loss Claim. See Schlemmer Dep. at 105. Mr. Schlemmer testified that that agreement was reduced to writing with the intent that all parties formally executed. Mr. Schlemmer further testified that ESIS, Black & Decker's representative, was coordinating the execution process of the document, and although he signed the document, he is unclear whether he ever received or saw a final version signed by Black & Decker. See Schlemmer Dep. at 105-107. Mr. Schlemmer was clear, however, that Black & Decker was a "signatory" to the cost-sharing agreement. Schlemmer Dep.

- 10 -

at 107. Mr. Schlemmer further testified that Liberty Mutual made payments pursuant to that agreement with respect to the Mississippi Hearing Loss case. Schlemmer Dep. at 107.

In a letter from Gordon Clifford, a Team Leader at ESIS, Black & Decker's claims handler, in a letter dated December 28, 1993, to the carriers who were parties to the cost-sharing agreement with respect to the Mississippi Hearing Loss Claim, attached hereto as Exhibit O, set forth certain revised percentages under the cost-sharing agreement with respect to the Home and Twin Cities insurance companies. In his letter, Mr. Clifford indicated that the invoices for Black & Decker's defense costs were being passed along to the carriers "pursuant to the cost-sharing agreement."

As it is apparent from the deposition testimony of Mr. Schlemmer and the documents referenced herein, pursuant to the cost-sharing agreement entered into by Black & Decker and its carriers with respect to the Mississippi Hearing Loss Claim, Liberty Mutual was only responsible for paying 37.5% of the total incurred defense costs. As is set forth in the agreement itself, that the parties intended to adopt a mechanism for allocating the responsibility for defense costs and indemnity payments, "by way of compromise and accord." See Cost-Sharing Agreement at 3. The cost-sharing agreement further identified ESIS as the "manager" of the defense of the hearing loss claims against Black & Decker and that ESIS was operating "in the best interest of Black & Decker." Cost-Sharing Agreement at 6-7. Finally, the parties agreed that "[p]ayments for defense of Hearing Loss Claims made pursuant to this Agreement be final and will not be reallocated." Cost-Sharing Agreement at 7.

In its papers submitted to the Court, and in their oral presentation, the Defendants maintain that they are no longer bound by the provisions of the cost-sharing agreement. This is

simply not so. Pursuant to the agreement which Black & Decker recognized to be "by way of compromise and accord," the parties agreed in 1992 to allocate the defense costs amongst themselves. At that time, Black & Decker agreed to accept a 33.5% share of the defense costs. It cannot now go back on that agreement in an attempt to have Liberty Mutual pick up Black & Decker's portion of the defense costs, which share Black & Decker had accepted long ago. Moreover, as is clear from the documents, Liberty Mutual made and Black & Decker's representative accepted payments by Liberty Mutual pursuant to the cost-sharing agreement. The Defendants, therefore, cannot now claim that they are not bound by the terms of that agreement.

     3.    Mississippi Hand/Arm Vibration Claim

     As previously set forth in the papers submitted by the parties, the Mississippi Hand/Arm Vibration Claim is similar to the Mississippi Hearing Loss Claim, in that the claims were made by present and former Ingalls Shipyard employees who worked at the same facility at issue in the Mississippi Hearing Loss Claim, utilizing the same tools used in the Ingalls Shipyard allegedly manufactured by Black & Decker amongst other companies. The claims were brought by the same attorneys representing the plaintiffs in the Mississippi Hearing Loss Claim.

     The defendants maintain that Liberty Mutual owes to them a duty to defend Black & Decker with respect to the Mississippi Hand/Arm Vibration Claims. While Liberty Mutual does not dispute the fact that it is obligated to participate in the payment of defense costs with respect to the Mississippi Hand/Arm Vibration Claim, it maintains that any such participation would be pursuant to the terms of the cost-sharing agreement in place with respect to the Mississippi Hearing Loss Claim. As testified to by Mr. Schlemmer during his deposition, because the plaintiffs in the two claims were identical, because the lawyers in the two claims were identical,

and because the tools at issue and the facility where the tools were allegedly located were

identical, therefore it was the intent of all the parties that the handling of the Mississippi

Hand/Arm Vibration Claim would be governed by the cost-sharing agreement already in place

with respect to the Mississippi Hearing Loss Claim:

> Q.    [Mr. Bennett]  Has there been any joint defense agreement in the
> Mississippi Vibration case?
>
> A.    [Mr. Schlemmer]  Again, I think the general thought process of the
> Joint Defense Group from hearing loss was that the same group
> was just going to carry over to the vibration cases, because of them
> really being in concept just another arm of the same plaintiffs,
> same plant, same issues, same products.  So everyone kind of
> considered it to be a new version of the same thing.
>
> . . .
>
> Q.    Did Liberty Mutual ever send Black & Decker a letter setting forth
> its coverage position with respect to the Mississippi Vibration
> case?
>
> A.    In the discussions I had, again, that same discussion with Black &
> Decker and Miles & Stockbridge, my recollection is that the gist of
> that discussion was the same coverage positions from the hearing
> loss will apply here and so no, I did not send a letter.

Schlemmer Dep. at 137-138.

Therefore, it is Liberty Mutual's position that it is responsible to pay only 37.5% of those

defense costs incurred by Black & Decker with respect to the Mississippi Hand/Arm Vibration

Claim.

### 4.    The Maritime Hearing Loss Claim and The Farrell Claim

With respect to the Maritime Hearing Loss Claim, and the Alwell Claim, there is no

dispute that Liberty Mutual has agreed to provide a defense to the Defendants.  Therefore, there

is no dispute existing between Liberty Mutual and the Defendants with respect to the duty to

defend the Maritime Hearing Loss Claim and the Alwell Claim.  Therefore, this Court should dismiss and deny the Defendants' motion for summary judgment against Liberty Mutual with respect to these two active long-term exposure claims.[1]

**B.    Further Review Of Evidence Concerning Alleged MITE And Farrel Policies**

At the Court's request, we have reviewed evidence produced by the Defendants concerning certain alleged policies.  Upon examination of said evidence, Liberty Mutual states as follows:

1.    A copy of the Farrel general liability policy dated July 1, 1963 - July 1, 1964 has been produced.  As such, this policy may be deemed to be "found."

2.    A copy of the Farrel excess policy dated 1966 to 1967 has been produced.  As such, this policy may be deemed to be "found."

3.    A copy of the MITE general liability policy dated January 1, 1974 to January 1, 1975 has been produced.  As such, this policy may be deemed to be "found."

4.    A copy of the MITE excess policy dated January 1, 1971 to January 1, 1972 has been produced.  As such, this policy may be deemed to be "found."

---

[1]    In their motion, the Defendants also maintain that they are entitled to a declaration from this Court that Liberty Mutual owes a duty to indemnify the Defendants with respect to these five long-term exposure claims.  See Defendants' Motion at ¶5.  First of all, the Defendants have admitted that they have paid no indemnity with respect to the Arkansas Hearing Loss Claim, the Mississippi Hearing Loss Claim, and the Maritime Hearing Loss Claim, and that those claims have been dismissed.  See Defendants' Memorandum at 60, 62 and 64.  Therefore, Liberty Mutual is entitled to the entry of summary judgment with respect to any such duty to indemnify.

With respect to the Mississippi Hand/Arm Vibration Claim, and the Alwell Claim, the Defendants admit that they have paid no indemnity with respect to these two claims, although they state that the underlying actions remain "pending."  See Defendants' Memorandum at 66-67.  The Defendants also have failed to supply any affidavits or otherwise averred-to documents to meet their burden of establishing that the "bodily injury" which allegedly "occurred" to the underlying plaintiffs, in fact took place during the policy periods purportedly at issue as to these two claims and such "bodily injury" was neither "expected nor intended" by the Defendants.  Therefore, they have failed to meet their burden of establishing coverage under the Liberty Mutual policies, and summary judgment should be entered against them.  At the very least, this Court should dismiss their motion with respect to the duty to indemnify as the Defendants have failed to establish a record upon which this Court might make a summary judgment determination in their favor.

5.    A copy of the MITE excess policy dated January 1, 1975 to 1976 has been produced. As such, this policy may be deemed to be "found."

6.    A copy of the MITE excess policy dated January 1, 1976 to January 1, 1977 has been produced. As such, this policy may be deemed to be "found."

7.    Neither a copy of the alleged MITE general liability policy dated January 1, 1975 to January 1, 1976 has been produced nor has sufficient secondary evidence been produced to prove the terms of that policy. As such, this policy remains at issue.

8.    Neither a copy of the alleged MITE general liability policy dated January 1, 1976 to January 1, 1977 has been produced nor has sufficient secondary evidence been produced to prove the terms of that policy. As such, this policy remains at issue.

9.    Neither a copy of the alleged MITE general liability policy dated January 1, 1978 to January 1, 1979 has been produced nor has sufficient evidence been produced to prove the terms of that policy. As such, this policy remains at issue.

10.    Neither a copy of the alleged MITE general liability policy dated January 1, 1979 to January 1, 1980 has been produced nor has sufficient evidence been produced to prove the terms of that policy. As such, this policy remains at issue.

C.    **Additional Terms and Conditions Which Would Be Contained In The Non-Existent Policies**

Responding to the Court's request that Liberty Mutual identify certain terms and conditions that would have been included in the non-existent policies, Liberty Mutual identifies the following endorsements limiting coverage that would have been in use during periods allegedly covered by the non-existent policies:

pollution exclusion endorsements restricting coverage for non-sudden and non-accidental pollution events;

reporting period endorsements providing that a loss must be reported within a set period of time;

endorsements providing for deductibles to be paid by the insured;

named insured endorsements specifying which company locations and divisions are insured;

non-stacking and non-commutation provisions prohibiting the aggregation of limits under multiple policies for a single occurrence; and

endorsements amending the limits of liability.

Due to time constraints, counsel for Liberty Mutual has not been able to construct a comprehensive list of endorsements limiting coverage. Moreover, due to the prevalence of the practice of manuscripted, it would be very difficult if not impossible to determine the full range of endorsements would have been in use. Additionally, Liberty Mutual identifies the following policy provisions that cannot be determined by reference to the policy jacket:

limits of liability for bodily injury claims;

limits of liability for property damage claims;

aggregate liability limits; and

specific types of coverage purchased by the insured, such as property damage.

At the further summary judgment hearing in this matter, Liberty Mutual will supplement this statement regarding terms and conditions that would have been included in the non-existent policies had they existed.

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Karen R. Sweeney (BBO #557050)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA  02109
(617) 951-9000

DATED:  May 20, 1998

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was served on all counsel of record by first class mail and telecopy on May 20, 1998.

Robert A. Whitney

11478-122:242679 v1

- 17 -

EXHIBIT

C

Liberty has paid all amounts required concerning the defense of the five Long Term Exposure Claims raised by Black and Decker in its Summary Judgment Motion.[1] The following reasons also indicate why Summary Judgment should not enter in favor Black and Decker as to the Long Term Exposure Claims.

<u>Arkansas Hearing Loss</u>

- Liberty has paid thirty-three percent (33%) and has agreed to pay the costs attributable to 1964-1967; B&D does not object

- Must deduct from any amount allegedly due, Liberty's prior payments of $155,754

- Must also deduct amounts previously paid by or allocated to other carriers (the amounts are unknown)

- Interest is not payable because:

   (1) With B&D's consent, Liberty paid pursuant to a cost sharing agreement at least up to February 1998; B&D made <u>no</u> demand for 100% payment of all costs until February 1998 in its Summary Judgment Motion; and

   (2) after case began in April, 1996, B&D did not forward invoices until dates in 1998 and thereafter; Liberty then needed to review the invoices for reasonableness and necessity

- Liberty is not liable for Miles & Stockbridge invoices which comprise $490,865.52 of the $616,119.95 allegedly due because:

   (1) Miles & Stockbridge apparently did not bill those amounts to B&D;

   (2) the amounts apparently were also never forwarded to other carriers for payment;

   (3) B&D did not produce any M&S invoices for reimbursement until February 1998 or thereafter even though they pertain to services rendered as early as 1993; and

   (4) the amounts are unreasonable and unnecessary

- To the extent that interest is payable, it must be calculated using the applicable federal rates

---

[1] B&D has not addressed in its Summary Judgment Motion any LTE claims other than the five addressed herein.

## Mississippi Hearing Loss

- B&D agreed to and performed under a cost sharing agreement which limits Liberty's Liability to 37.5%;

- Liberty paid all obligated amounts under the agreement: $640,045.88 ($158,214 (prior to 4/02) + $481,831.88 (on 4/02));

- B&D's performance under the agreement indisputably binds it to its terms; lack of a signed agreement does not excuse B&D from compliance;

- Agreement states payments are final and not to be reallocated;

- ESIS, Inc., which acted for B&D, acknowledged that payments were made pursuant to the cost-sharing agreement;

- Language which B&D cites as to the interim nature of agreement fails to suggest that payments are not final and not to be reallocated; language indicates only that parties preserve their rights as to future issues which might arise;

- To the extent that Liberty is liable for more than $640,045.88, Liberty must receive credit for amounts paid by or allocated to other carriers (amounts are unknown);

- Interest is not payable because:

    (1) With B&D's consent, Liberty paid pursuant to a cost sharing agreement at least up to February 1998; B&D made no demand for 100% payment of all costs until February 1998 in its Summary Judgment Motion); and

    (2) after case began in April, 1996, B&D did not forward invoices until dates in 1998 and thereafter; Liberty then needed to review the invoices for reasonableness and necessity

- Liberty is not liable for Miles & Stockbridge invoices which comprise $648,037.24 of the $1,224,957.09 allegedly due because:

    (1) Miles & Stockbridge apparently did not bill those amounts to B&D;

    (2) the amounts apparently were also never forwarded to other carriers for payment;

    (3) B&D did not produce any M&S invoices for reimbursement until February 1998 or thereafter even though they pertain to services rendered as early as 1993; and

    (4) the amounts are unreasonable and unnecessary

- To the extent that interest is payable, it must be calculated using the applicable federal rates

<u>Mississippi Hand/Arm Vibration</u>

- B&D agreed to cost share agreement – Liberty obligated to pay only 37.5% of defense costs

- No reason exists to have an agreement any different than the cost-share agreement that exists in Mississippi Hearing Loss case; cases were essentially identical in that attorneys, facility, tools and nature of plaintiffs were the same

- Liberty paid obligated amounts ($144,204)

- Liberty must receive credit for amounts paid by or allocated to other carriers (amounts are unknown)

- Interest is not payable because:

  (1) With B&D's consent, Liberty paid pursuant to cost sharing agreement at least up to February 1998; B&D made <u>no</u> demand for 100% payment of all costs until February 1998 in its Summary Judgment Motion; and

  (2) after case began in April, 1996, B&D did not forward invoices until dates in 1998 and thereafter; Liberty then needed to review the invoices for reasonableness

- Liberty is not liable for Miles & Stockbridge invoices which comprise $317,497.32 of the $384,544.40 in total defense costs (B&D alleges that only $240,340.40 is now due) because:

  (1) Miles & Stockbridge apparently did not bill those amounts to B&D;

  (2) the amounts apparently were also never forwarded to other carriers for payment;

  (3) B&D did not produce any M&S invoices for reimbursement until February 1998 or thereafter even though they pertain to services rendered as early as 1993; and

  (4) the amounts are unreasonable and unnecessary

- To the extent that interest is payable, it must be calculated using the applicable federal rates

<u>Maritime Hearing Loss</u>

- Liberty paid all defense costs; B&D agrees

- Interest is not payable – B&D did not provide <u>any</u> invoices until after summary judgment motions were filed in February 1998; thereafter, Liberty needed time to evaluate invoices for reasonableness and necessity

- To the extent that interest is payable, it must be calculated using the applicable federal rates

<u>Alwell</u>

- Liberty paid 161,759.57 (only $2,053 is in dispute)

- Interest is not payable – B&D did not provide any invoices until after summary judgment motions were filed in February 1998; thereafter, Liberty needed time to evaluate invoices for reasonableness and necessity

- To the extent that interest is payable, it must be calculated using the applicable federal rates

EXHIBIT

D

4).  The remaining claims against Farrel were dismissed in 1996.  Id.  Black & Decker paid no indemnity.  Id.

The Farrel and USM policies which covered Farrel from 1964 through January 1, 1979 were applicable to this claim.  (App. III:076-240, IV:001-127, VII:001-285, and VIII:001-296).  Other insurers covered subsequent periods.

Liberty Mutual never has disputed that the Arkansas Hearing Loss claims were covered under its CGL policies that insured Farrel.  Instead, it denied the existence of policies that it issued to Farrel (App. XXVII:033-034).  Black & Decker and its insurers allocated defense costs pursuant to cost sharing agreements, with each insurer paying in proportion to the percentage of the exposure period for which it provided coverage (App. XXVII:020-024).  Black & Decker was treated as "uninsured" for the portion of the exposure period for which Liberty Mutual disputed, without basis, the existence of Farrel policies (Id.; App. XXVII:041-042), and had to pay the costs allocable to that period (App. XXVII:043).

Liberty Mutual first denied that it issued any policies to Farrel before 1971 (App. XXVII:033-034).  After Black & Decker's counsel disputed that assertion (see, App. XXVII:035-050), Liberty Mutual admitted that it issued policies to Farrel from 1967 through 1971 (App. XXVII:010-

Again, Liberty Mutual has not disputed that these claims were covered by the CGL policies it issued to Black & Decker (App. XXVII:053-056). Instead, as with the Arkansas Hearing Loss claim, it relied on the absence of policies in its files. Liberty Mutual paid a portion of the defense costs, pursuant to a cost sharing agreement comparable to that in the Arkansas Hearing Loss claim (App. XXVII:057-069). For purposes of that agreement, the exposure period was deemed to begin in 1964. Id. Liberty Mutual has not assumed costs allocable to 1964-1970, leaving these costs to be paid by Black & Decker instead (App. XXVII:053-056).

There is no basis for the conclusion that Black & Decker was uninsured before 1970. As discussed above, Liberty Mutual issued CGL policies to Black & Decker from 1937 through 1979. See, II A 1 a, supra and App. XIV. As also discussed above, Liberty Mutual had a duty to defend Black & Decker under these policies. Between 1963 and 1970 policy limits were $1,500,000 (See, App. XIV:001-007) re is no suggestion that those limits have been usted. Liberty Mutual cannot dispute and never has ted that the claims here in issue are covered claims. s no sound basis for Liberty Mutual to refuse to pay rtion of Black & Decker's defense costs.

**EXHIBIT**

E

**Ætna**

P.O. Box 650227
Dallas, TX 75265-0227
214-477-7852

July 10, 1992

Ms. Peter Rasmussen
Ms. John Adams
Mr. Norman Girouard
Mr. Darrell McCauley
Mr. Burt Miller

Dear Curtner:

RE: Insured: Farrel Corporation
    Plaintiff: Billy Adams, ET AL
    Plant: Cooper Tire

A meeting is scheduled in Ansonia, Connecticut at Farrel for Tuesday, August 4, and Wednesday, August 5. Representatives for Farrel and the prior owners of Farrel, Emhart, will be present. In addition Tennebaum defense counsel, Bob Dunkin, and technical counsel, Peter Coleman will be available to provide a status on the litigation and to discuss a record search with the insured. A tour of the facility is planned with demonstrations of the Farrel machinery. After that a meeting is planned with defense counsel to give them the opportunity to discuss and answer questions about the litigation.

As I advised you in my last letter we will be modifying the present cost sharing agreement. I have identified Liberty Mutual as the carrier for the owners of the Farrel Corporation from 12-31-64 to 5-4-76 and Liberty as agreed to attend a cost sharing meeting to discuss a possible contribution to defense. A cost sharing meeting combined with the above meeting would give all parties the chance to meet and exchange and attorneys and to get updated on this case.

For the purpose of sharing costs I have identified the period 6-1-64 to 2-1-91. The oldest Farrel machine in the Cooper Tire plant has a manufacture date of 6-1-63 (This was obtained from the serial number). Mr. Emhdtditr with Farrel has advised that it is roughly one year from the date of manufacture to installation, thus the beginning date of 6-1-64. The complaint was filed in January of 1991 and our insured was served in February, thus the date of 2-1-91.

Attached to this letter is a chart outlining the owners of the Farrel Corporation and their carriers for this period. To insure that the percentages worked out to 100, I took some liberties in rounding the percentages to whole numbers.

| CARRIERS | POLICY PERIOD | NO. OF MONTHS | PERCENTAGE |
|---|---|---|---|
| | 6-1-64 to 12-31-64 | 55 | 17 |
| Unidentified | 12-31-64 to 5-4-76 | 52 | 27 |
| Liberty Mutual | 5-4-76 to 5-13-86 | 132 | 44 |
| Aetna | 5-13-86 to 5-13-87 | 12 | 4 |
| Hartford | 5-13-87 to 5-13-88 | 12 | 4 |
| Home | 5-13-88 to 5-13-89 | 12 | 4 |
| AIG | 5-13-89 to 2-1-91 | 5 | 3 |
| Zurich | | | |
| | TOTAL | 320 | 100 % |

XXVII-020

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0042860

JUL 22 '92  10:34AM                                                          P.2



As you can see we have a period for which no carriers have been identified. How this will affect the cost sharing issue is one we will need to discuss during our meeting. To assist in this discussion I am enclosing a cost sharing agreement that reflects only the identified months of coverage.

Also attached to this letter is a copy of the proposed agenda for the meeting. If you have any suggestions or additions please advise. For the moment we are flexible as to how the meeting will progress. I suggest that everyone set aside two days for the meeting in case the time is needed. If we work effectively this may be the only carrier meeting that will be necessary. Please advise on your plans to attend.

Sincerely,

Delores Ladd
Senior Regional Analyst
Southern Environmental Claim Office

JUL 22 '92 10:34AM

P.3

XXVII-021

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0042861



XXVII-022

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0042862



JUL 22 '92 10:34AM

### COST SHARING PROPOSAL USING
### ONLY IDENTIFIED MONTHS

| CARRIERS | POLICY PERIOD | NO. OF MONTHS | PERCENTAGE |
|---|---|---|---|
| Liberty Mutual | 12-31-65 to 5-4-76 | 88 | 33 |
| Aetna | 5-4-76 to 5-12-86 | 132 | 49 |
| Hartford | 5-13-86 to 5-12-87 | 12 | 5 |
| Home | 5-13-87 to 5-13-88 | 12 | 5 |
| AIG | 5-13-88 to 5-13-89 | 12 | 5 |
| Zurich | 5-13-89 to 2-1-91 | 9 | 3 |
| | TOTAL | 265 | 100% |

XXVII-023

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0042863

P.5

JUL 22 '92 10:35AM

## AGENDA

I. Tour of Lab at Panel
   A. Demonstration of Panel equipment
      1. Sound readings

II. Litigation Overview Provided by Defense Counsel
   A. Explanation of joint defense counsel
      1. Role of Mississippi counsel

III. Carrier Cost Sharing Meeting
   A. Cost sharing proposal
   B. Unidentified excess years
      1. Liberty mutual search for the carriers for the
        original excess
   C. Payment method for defense invoices
      1. Who will be paying for the AIG policy years
   D. Reimbursement of AEtna's past costs
   E. Role of lead carrier (AEtna)
   F. Carrier oversight committee

P.6

XXVII-024

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0042864

EXHIBIT

F

March 15, 1993

Ms. Shirlann Shifflett
Black & Decker (U.S.) INC.
Claims Administrator
701 East Joppa Road
Towson, Ma 21204

RE:    Insured:    USM Corp. (Emhart)
       Claimant:    B.C. Adams (Cooper Tire Litigation)

Dear Ms. Shifflett:

In November Liberty Mutual advised us that they could only document their USM coverage from November 1, 1971 till May 4, 1976.  At the same time they indicated that their records revealed that Aetna was the carrier for USM from January 1, 1969 till  until November 1, 1971.

Last week I spoke with Steven Johnson with Liberty.   They still have been unable to document any additional coverage.   My own efforts at proving Aetna's coverage has been fruitless, although I still have several avenues to explore.

I understand that Miles & Stockbridge is presently undertaking a review of the older Emhart documents and there is a possibility that they may uncover some additional information.

We have been holding payment of the defense invoices in abeyance in hopes that we would be able to shortly document all coverage and allocate the defense costs properly.   I think we can no longer to this.   Our defense counsel have been patient, but I think it would be an imposition to request that they wait further.

I suggest the following cost sharing proposal.   As I advised you on March 15, if we are able to document the coverage at a later date, the defense costs can be reallocated and reimbursements made at that time.



XXVII-041

PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0043922

| Carriers | Policy Period | No. of Mos. | Percentage |
|---|---|---|---|
| Undocumented | 6-1-64 to 11-1-71 | 89 | 27 |
| Liberty Mutual | 11-1-71to 5-4-76 | 54 | 17 |
| AEtna | 5-4-76 to 5-12-86 | 132 | 41 |
| Hartford | 5-13-86 to 5-13-87 | 12 | 4 |
| Home | 5-13-87 to 5-13-88 | 12 | 4 |
| AIG | 5-13-88 to 5-13-89 | 12 | 4 |
| Zurich | 5-13-89 to 2-1-91 | 9 | 3 |

By carbon of this letter I am advising the other carriers of these percentages. In preparation of paying the defense invoices I ask that they check their files to ensure that they have them. If they do not I request that they contact me, so I can provide them with copies. Let's set a goal of paying the past invoices within the next 30 days.


Sincerely,


Delores Ladd
Senior Regional Account Analyst
214-470-7064

cc:   Mr. Peter Rusmussen
      Mr. John Ahrens
      Mr. Norman Girouard
      Mr. Steven Johnson
      Mr. Burt Miles

---

XXVII-042

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0043923

EXHIBIT

G

ESIS, Inc.
a CIGNA company

10440 Little Patuxent Parkway
P.O. Box 18
Columbia, MD 21045-0018
(301) 740-3800



November 15, 1991

Ms. Laura Jackson, Claims Supervisor
Liberty Mutual Insurance Company
775 Woodlands Parkway, Suite 102
P.O. Box 12575
Jackson, MI  39236-2575

Mr. Robert Pantano
Home Insurance Company
One Independence Hall
Philadelphia, PA  19106

John Arscott, Esquire
Mendes & Mount
Three Park Avenue
New York, NY  10016-5902

Mr. Fred Jeans, Claims Supervisor
Hartford Insurance Group
Twin City Fire Insurance Company
200 Hopmeadow Street
Simsbury, CT  06070

RE:      Our file no.:          1919-140-874185-4/LMC
         Our client:            Black & Decker

                    Mississippi Hearing Loss

Dear Carriers:

By now you have received correspondence from Evelyn Marcin at Black & Decker informing you of a lawsuit filed in Mississippi by thirteen (13) employees of Ingall's Shipyard.  Attached, is the Complaint which alleges permanent hearing loss to Plaintiffs resulting from their exposure (as early as 1944) to noise from pneumatic tools manufactured by Black & Decker and others.  Black & Decker may also become involved in a much larger, identical case involving 2,400 Plaintiffs currently being removed from Federal to State Court.

Also enclosed is a chart listing coverages dating back to July 1, 1970.  ESIS, a CIGNA Company, has been providing claims services to Black & Decker since October 1, 1986 and as such, we will coordinate defense of this suit.  I ask that each of you locate your respective policies and forward them to me for assimilation.  I realize this may be difficult but your effort is certainly appreciated.

The State of Mississippi recognizes a modified discovery rule for purposes of establishing a limitations defense.  In latent disease cases such as hearing

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0041617

Ms. Laura Jackson, Claims Supervisor
Liberty Mutual Insurance Company

Mr. Robert Pantano
Home Insurance Company

John Arscott, Esquire
Mendes & Mount

Mr. Fred Jeans, Claims Supervisor
Hartford Insurance Group
November 15, 1991
Page Two

loss, the Mississippi Supreme Court has ruled the Statute of Limitations (six years for BI) begins to run the date a person knew or reasonably should have known that he or she had an injury. This does not necessarily mean the date of diagnosis. For those carriers with occurrence-based policies, your coverage should respond to claims where exposure dates fall within your policy period.

Black & Decker is represented by Mississippi counsel. These attorneys have been involved with the larger case and have formed a "Joint Defense Group" which they have allowed Black & Decker to join and thereby receive the benefit of 14 years of legal work at no cost. However, once Black & Decker is sued in the "Big" case, which seems to be inevitable, they will be asked to contribute to the defense fund. Currently, they are only being charged with work done directly for Black & Decker. Concerning legal expenses, I would like to reach an agreement among us to share these costs. I would prefer that we all meet and discuss it, however, it looks like that may be difficult so maybe we can arrange a conference call.

Please have your representative contact me at (301) 946-5078 or (410) 740-3911 (Tuesdays only), as soon as possible. Thank you and I look forward to hearing from you.

Sincerely,

Linda McCroddan, AIC
Senior Claim Representative

LM:bb07960

cc:   Evelyn Marcin, Sr. Claims Administrator
      Black & Decker
      701 E. Joppa Road
      Towson, MD  21204

      Richard Kidwell, Esquire
      Miles & Stockbridge
      600 Washington Avenue
      Towson, MD  21204

PRIVILEGED AND CONFIDENTIAL B&D MA     LM     0041618

EXHIBIT

H

CIGNA Property and Casu... ...mpanies

10440 Little Patuxent Parkway
P.O. Box 18
Columbia, MD 21045-0018
(410) 740-3800  1-800-828-7316

**CIGNA**

June 18, 1993

Alan Schlemmer                          Robert Pantano
Claims Examiner, Special Claims         Home Insurance Company
Liberty Mutual Insurance                One Independence Mall
100 Main Street                         Philadelphia, PA 19106
Dover, NH 03820-1525

Jeanne Mathis, Claims Supervisor
Hartford Insurance Group
Twin Cities Fire Insurance Company  *incorrect address*
200 Hopmeadow Street
Simsbury, CT 06070

RE:              File No:        1919-140-874185-4
                 Insured:       Black & Decker

### MISSISSIPPI HEARING LOSS LITIGATION

Dear Carriers,

It has been some time since I corresponded with you and I apologize for that delay. I'm wondering where the Cost Sharing Agreement is. It is my understanding that it was last sent to Bob Pantano. Bob, has the Agreement been signed by you and forwarded on to Rick Kidwell? If not, please do so. Thanks.

I enclose a copy of the most recent status report from Fred Krutz outlining the current posture of this case. If anyone wants more detailed information, please contact me. Also enclosed is a print out of the payments ESIS has made to date on behalf of Black & Decker. My last letter incorporated expenditures through September 4, 1992. Since then, ESIS has made additional payments totalling $167,644.46. According to our Cost Sharing Agreement, each carrier owes the following:

Liberty Mutual        37.5%         $62,866.67

Home Insurance        12.5%         $20,955.56

Twin Cities           12.5%         $20,955.56

If anyone needs copies of the actual bills, please give me a call at 301-898-3698. I would appreciate your remittance made payable to: ESIS and forwarded to me at: P.O. Box 18, Columbia MD 21045.

PRIVILEGED AND CONFIDENTIAL  B&D MA    LM    0041771

Page Two
Carriers

I have recently been informed by Black & Decker that this case will soon be supervised by the new Account Coordinator who is located at the Towson, Maryland Headquarters. You should expect to receive correspondence advising of this change in the near future. Thank you and I enjoyed working with you all.

Sincerely,


Linda McCroddan, AIC
Sr. Claim Representative


cc:    Rick Kidwell, Esq.
       Michael Margiotta
       Jean Montague

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0041772

EXHIBIT

I

ESIS, Inc.
a CIGNA company

Mid-Atlantic Regional APL Claims Office
701 East Joppa Road
TW 277
P.O. Box 6702
Towson, MD 21285-6702
(410) 716-2240    Fax (410) 716-2088



December 28, 1993

John P. Sweeney, Esq.
Miles & Stockbridge
10 Light Street
Baltimore, MD  21202

RE:  Mississippi Hearing Loss
     Client:          Black & Decker
     ESIS File Number:  2896-140-874185-4

Dear John:

I'm enclosing a copy of the correspondence submitted to each of
the participants in the Cost Sharing Agreement regarding the
above litigation.  Also I am enclosing a copy of the Cost
Sharing Agreement which has never been fully executed as
apparently once it was forwarded to Robert Pantanos attention
of Home Insurance sat.

As you can see in my enclosed letter I broached upon the
subject of revisiting the Cost Sharing Agreement due to changes
in the contribution between Twin Cities and Home Insurance. The
initial Cost Sharing required Home to participate at 12.5% and
Twin Cities as 4%.  As the matter stands the Home only has one
available policy period where as Twin City (being excess to the
Home) percentages should be increasing.  Thus I appreciate your
thoughts on this matter.

Also, I am assuming that each of the participating companies
will be shortly requesting status updates from the various
defense counsel.  Outside of reams of legal bills the last
status report in my file from anyone is Tom Hardys Oct. 13,
1993 letter to Jim O'Brien, wherein he forwarded summation of
the depositions of Drs. Orchik and Emmett.

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0041773

**Mississippi Hearing Loss**
page 2

Thus the next time you are talking with the various defense firms please request that they provide current status reports.

Very truly yours,


Gordon Clifford
Team Leader

CC: Jean Montague
CC: Mike Margiotta


bar/memo285

PRIVILEGED AND CONFIDENTIAL B&D MA    LM    0041774